UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

ERIC MATTHEW BENNETT,

     PLAINTIFF,

v.                                                                    Case No.: 4:23-cv-318

EQUIFAX INFORMATION SERVICES,             ]    ***JURY DEMAND***
LLC, EXPERIAN INFORMATION
SOLUTIONS, INC., AND TRANS UNION
LLC,

     DEFENDANTS.

## COMPLAINT

Plaintiff Eric Matthew Bennett ("Mr. Bennett" or "Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union LLC,[1] as follows:

## PRELIMINARY STATEMENT

1.     This is an action for an actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2.     One of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer

---

[1] Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union LLC are referred to collectively as "Defendants."

1

credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."  15 U.S.C. § 1681(b).

3.      The FCRA requires that when a consumer reporting agency prepares a consumer report, it must "follow reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom the report relates.  15 U.S.C. § 1681e(b).

4.      Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5.      Surveys have shown "between 1998 and 2003, approximately 27.3 million adults discovered they were victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone."  *Id.*

6.      On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").[2]  "This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers can better protect themselves and their families."[3]

7.      The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of,

---

[3]  https://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html    Last visited April 12, 2023.

and consumer access to, credit information, and for other purposes."[4]

8.      In 2004, according to the Federal Bureau of Investigation, "[i]dentity theft is one of the fastest growing crimes in the U.S., claiming more than 10 million victims a year.[5]"

9.      Between 2000 and 2014, the Federal Trade Commission ("FTC") identified identity theft as the number one complaint made to the FTC.[6]  In 2022, identity theft complaints again as the number one category of all complaints made to the FTC.[7]

10.      In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies ("CRAs") must follow when consumers dispute the accuracy of the information reported in their credit reports.  *See* 15 U.S.C. § 1681i.[8]

11.      The FCRA also "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

12.      Thus, the FCRA holds CRAs responsible for taking reasonable steps to correct a consumer's credit report once the theft is brought to their attention.  *See Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 506-07 (4th Cir. 2007) ("Of course, Equifax bore not responsibility

---

[4]      https://www.govinfo.gov/content/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf Last visited April 12, 2023.

[5]      https://archives.fbi.gov/archives/news/stories/2004/october/preventidt_102104 Last visited April 12, 2023.

[6]      https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints Last visited April 12, 2023.

[7]      https://www.ftc.gov/reports/consumer-sentinel-network-data-book-2022 Last visited April 12, 2023.

[8]      Furnishers have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2.

for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct [the plaintiff]'s credit report once she has brought the theft to the company's attention.").

13.     FACTA imposes additional duties on CRAs to repair the damage done to identity theft victims' credit files by blocking information that is the result of identity theft.

14.     Specifically, CRAs are required to block the reporting of any information in the file of a consumer that the consumer identifies is a result of identity theft, not later than 4 business days after receiving (1) appropriate proof of identity; (2) a copy of the identity theft report; (3) the identification of such information by the consumer; and, (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.  15 U.S.C. § 1681c-2(a).

15.     The ability to obtain a "block" of information is especially important to consumers because once a block is in place, the account is permanently removed from the consumer's credit report and creditors are prohibited from sending the blocked account to collections.  *See* 15 U.S.C. § 1681m(f).  On the other hand, when a dispute is made without a claim of identity theft may result in the deletion or suppression of an account, but the creditor may continue with collection efforts. *See* 15 U.S.C. § 1681i.

16.     A CRA may decline to "block" disputed information only if the CRA reasonably determines that the consumer's request is based on a material misrepresentation or made in error. *See* 15 U.S.C. 1681c-2(c)(1). When a CRA declines to block information disputed pursuant to § 1681c-2(a), the CRA must notify the consumer, in writing, of the business name and address of any furnisher that it contacted upon receiving the identity theft report and that the consumer has a right to add a statement to the file disputing the accuracy or completeness of the disputed information.  *See* 15 U.S.C. §§ 1681c-2(c)(2) and 1681i(a)(5)(B).

4

17.     When a CRA does not determine that a material misrepresentation or error occurred, it cannot decline to block before it requests additional information from the consumer for the purpose of determining the validity of the alleged identity theft.  *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

18.     Despite the FCRA's requirements, Defendants regularly decline to block the reporting of fraudulent information by wrongfully rejecting valid identity theft reports outright and relying instead on the same verification process it uses for non-identity theft disputes.

19.     In further violation of the FCRA, Defendants willfully and negligently declined to block the reporting of information alleged by Plaintiff to result from identity theft in violation of 15 U.S.C. § 1681c-2(a), despite receipt of all required documentation from Plaintiff.

20.     The plain language of § 1681c-2 is clear, and Defendants are on notice of its requirements, both from the guidance of the FTC and the prior decision in *Osada v. Experian Info. Solutions, Inc*., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012).

21.     According to standardized policies and procedures, Defendants willfully treat valid identity theft claims as regular credit report disputes.

22.     Any identity theft claims Defendants deem to be lacking in information, each willfully, and according to their own standardized policies and procedures, decline to block the reporting of the fraudulent information outright rather than requesting additional information or documentation directly from the consumer (as it did with Plaintiff) and as required by 12 C.F.R. § 1022.3(i)

23.     Defendants have been sued thousands of times wherein an allegation was made that said defendants violated the FCRA.

24.    Defendants has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times each has been sued.

25.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

26.    Likewise, prior to this lawsuit, Defendants received consumer complaints directly from consumers and indirectly from the Better Business Bureau and government agencies concerning other similar incidents.

27.    Notwithstanding thousands of consumer complaints, the sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the defendants.

28.    Defendant Equifax Information Services, LLC reported $ 5,122,000.000.00 (5.1 billion) in revenue for 2022.[9]

29.    Defendant Experian Information Solutions, Inc.'s parent corporation, Experian plc, reported over $ 6,200,000,000.00 (6.2 billion) in revenue for 2022.[10]

30.    Defendant Trans Union LLC reported $ 3,710,000,000.00 (3.7 billion) in revenue for 2022.[11]

---

[9]https://d1io3yog0oux5.cloudfront.net/_807c082bf071acdf179103742e11ae70/equifax/news/2023-02-08_Equifax_Delivers_Record_2022_Revenue_of_5_122_1275.pdf Last visited April 12, 2023.

[10] https://www.experianplc.com/media/latest-news/2022/full-year-results-fy22-180522/ Last visited April 12, 2023.

**JURISDICTION & VENUE**

31.     This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C § 1331.

32.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district and division.  Plaintiff communicated with Defendants concerning the disputed information from this judicial district. Defendants sent communications concerning Plaintiff's disputes to Plaintiff in this judicial district.

**PARTIES**

33.     Mr. Bennett is an adult individual and a resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

34.     Defendant Equifax Information Services, LLC ("Equifax") regularly does business in this judicial district and is a Georgia corporation with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309.  Equifax is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

35.     Defendant Experian Information Solutions, Inc. ("Experian") regularly does business in this judicial district and is an Ohio corporation with its principal place of business located at 475 Anton Blvd., Costa Mesa, California 92626.  Experian is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

36.     Defendant Trans Union LLC ("Trans Union") regularly does business in this judicial district and is a Delaware limited liability corporation with its principal place of business

---

[11] https://investors.transunion.com/~/media/Files/T/Transunion-IR-V2/reports-and-presentations/q4-22-earnings-report.pdf Last visited April 12, 2023.

located at 555 W Adams St., Chicago, Illinois 60661.  Trans Union is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

37.     Plaintiff is a victim of identity theft.

38.     An impostor applied for and opened an account with Sallie Mae using some of Mr. Bennett's personal identifying information ("PII").

39.     The account was opened due to fraud (hereinafter, the "Account").

40.     Defendants are credit reporting the Account on Mr. Bennett's file as a derogatory account and charged off in the amount of $ 16,524.

41.     The Account is inaccurate because it does not belong to Mr. Bennett.

42.     Mr. Bennett did not apply for, authorize someone on his behalf to apply for credit with, or receive any goods, benefits, or services in connection with the Account.

43.     Upon information and belief, the Account is the result of the theft of Plaintiff's identity.

44.     Mr. Bennett reported the theft of his identity to law enforcement agencies, including the Melissa Police Department and the FTC.

45.     Mr. Bennett disputed the inaccurate information to the Defendants.

46.     Notwithstanding, Defendants failed to delete the disputed inaccurate information or fully, reasonably, properly reinvestigate Plaintiff's disputes or block the Account from appearing on Plaintiff's credit report.

47.     Thereafter, Defendants prepared consumer reports related to Mr. Bennett that included the inaccurate information and after notice of Plaintiff's disputes.

48.     Defendants reported the Account as a derogatory account and as follows:

      a.     30, 60 and 90 Days Past Due;

      b.     $ 16,524 Charged Off; and,

      c.     $ 24,272 Past Due Balance.

49.    The above reported credit information is untrue.

50.    The inaccurate information harms Mr. Bennett's credit reputation because the Account history does not accurately depict Plaintiff's credit history or creditworthiness, or both.

51.    Defendants continue to report the inaccurate Account information as of today's date on Mr. Bennett's file.

### *Plaintiff's Experience with Equifax*

52.    During the two years preceding Plaintiff's Complaint, Mr. Bennett disputed the inaccurate information to Equifax no less than four times.

53.    In support of his disputes, Plaintiff provided Equifax with his full name, date of birth, current address, Social Security number, handwritten signature, and copies of his driver's license, identity theft report and utility bill. Plaintiff also provided Equifax with the Melissa Police Department's case number and phone number.

54.    On at least two occasions, Equifax failed to acknowledge receipt of Plaintiff's dispute, delete the disputed information, or otherwise respond to Mr. Bennett's disputes.

55.    One at least one occasion, Experian did not respond to Plaintiff's dispute for until almost two months after it received Mr. Bennett's dispute letter.

56.    On at least one occasion, Equifax represented to Plaintiff that it refused to reinvestigate his dispute.

57.    On other occasions, Equifax generated dispute results stating it verified the Account belonged to Mr. Bennett.

58.    Equifax did not delete the Account after receipt of no less than four (4) disputes.

59.    Mr. Bennett provided Equifax with an identity theft report in support of his dispute of the inaccurate information.

60.    On at least one occasion, Equifax declined to block the Account after receipt of an identity theft report and without requesting additional information from Mr. Bennett.

61.    On at least one occasion, Plaintiff notified Equifax that he was a victim of identity theft and requested his file from Equifax.  Equifax received Mr. Bennett's request for his file. On at least two occasions, Equifax failed to provide Plaintiff with his file.

62.    Equifax prepared and continues to prepare consumer reports related to Plaintiff that include the Account.

### *Plaintiff's Experience with Experian*

63.    During the two years preceding Plaintiff's Complaint, Mr. Bennett disputed the inaccurate information to Experian no less than four times.

64.    In support of Mr. Bennett's disputes, Plaintiff provided Experian with his full name, date of birth, current address, Social Security number, handwritten signature, and copies of his driver's license, identity theft report and utility bill. Plaintiff also provided Experian with the Melissa Police Department's case number and phone number.

65.    Experian generated dispute results stating it verified the Account belonged to Plaintiff.

66.    Experian did not delete the Account after receipt of no less than four (4) disputes.

67.    On at least one occasion, Experian did not send Plaintiff the results of its reinvestigation or delete the Account.

68.     Mr. Bennett provided Experian with an identity theft report in support of Plaintiff's dispute of the inaccurate information.

69.     On at least one occasion, Experian declined to block the Account after receipt of an identity theft report and without requesting additional information from Mr. Bennett.

70.     On at least three occasions, Plaintiff notified Experian that he was a victim of identity theft and requested his file from Experian.  Experian received Plaintiff's request for his file. On at least three occasions, Experian failed to provide Plaintiff with his file.

71.     Experian prepared and continues to prepare consumer reports related to Plaintiff that include the inaccurate information, including but not limited to the Account.

### *Plaintiff's Experience with Trans Union*

72.     During the two years preceding Plaintiff's Complaint, Mr. Bennett disputed the inaccurate information to Trans Union no less than four times.

73.     In support of his disputes, Plaintiff provided Trans Union with his full name, date of birth, current address, Social Security number, handwritten signature, and copies of his driver's license, identity theft report and utility bill. Plaintiff also provided Trans Union with the Melissa Police Department's case number and phone number.

74.      Trans Union generated dispute results stating it verified the Account belonged to Plaintiff.

75.     Trans Union did not delete the Account after receipt of no less than four (4) disputes.

76.     On at least one occasion, Trans Union refused to reinvestigate Plaintiff's dispute and misrepresented to him that he did not provide Trans Union with additional relevant

information in support of his dispute. Mr. Bennett did provide Trans Union additional relevant information in support of his dispute.

77.     Plaintiff provided Trans Union with an identity theft report in support of his dispute of the inaccurate information.

78.     On at least one occasion, declined to block the Account after receipt of an identity theft report and without requesting additional information from Mr. Bennett.

79.     On at least four occasions, Plaintiff notified Trans Union that he was a victim of identity theft and requested his file from Trans Union.  Trans Union received Plaintiff's requests for his file. On at least four occasions, Trans Union failed to provide Plaintiff with his file.

80.     Trans Union prepared and continues to prepare consumer reports related to Plaintiff that includes inaccurate information, including but not limited to the Account.

### *The CRA Defendants' Parroted the Furnisher's Responses to the Disputes and Did Not Perform a Reasonable Reinvestigation of Plaintiff's Disputes*

81.     In response to Plaintiff's disputes, Defendants did not contact third parties, including but not limited to the Melissa Police Department or FTC, or both, concerning the accuracy of the disputed Account.

82.     Defendants also did not review underlying account documents related to the Account contained in Plaintiff's file or the subject of Plaintiff's disputes, or both, such as the application for credit or promissory note, or both.

83.     Defendants did not conduct any handwriting analysis on Plaintiff's signature or the signature on the Account application or promissory note.

84.     Defendants did not make a reasonable inquiry into the disputed information.

85.     Defendants did not review all relevant information provided by Plaintiff related to the disputed Account.

86.    At best, Defendants verified the false information simply parroting the furnisher's verification of Plaintiff's ownership of the Account.

87.    Defendants failed to modify or delete all the inaccurate Account information.

88.    Despite Plaintiff's exhaustive efforts to date, Defendants have nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

89.    As of result of the defendants' conduct, Plaintiff has suffered multiple concrete and particularized injuries that are unique and distinct in the form of adverse credit action, damage to his credit reputation, out-of-pocket expenses, loss of time, and emotional distress.

90.    At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

91.    At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and Plaintiff's FCRA rights.

92.    The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to the Plaintiff that are outlined more fully above and, as a result, the defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

### COUNT ONE – VIOLATIONS OF THE FCRA
### (Against Equifax)

93.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

94. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

95. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

96. Equifax negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, i, c-1 and c-2.

97. Alternatively, Equifax willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, i, c-1 and c-2.

98. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT TWO – VIOLATIONS OF THE FCRA
### (Against Experian)

99. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

100. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

101. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

102. Experian negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, i, c-1 and c-2.

103. Alternatively, Experian willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, i, c-1 and c-2.

104. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT THREE – VIOLATIONS OF THE FCRA
### (Against Trans Union)

105.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

106.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

107.    Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

108.    Trans Union negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, i, c-1 and c-2.

109.    Alternatively, Trans Union willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, i, c-1 and c-2.

110.    As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## JURY DEMAND

111.    Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendants as follows:

**On the First Claim for Relief**:

1.    Actual damages to be determined by the jury;

2.    Punitive damages to be determined by the jury;

3.    Statutory damages to be determined by the jury;

4.    Attorneys' fees and costs; and,

5.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

**On the Second Claim for Relief:**

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury;

4.  Attorneys' fees and costs; and,

5.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

**On the Third Claim for Relief:**

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury;

4.  Attorneys' fees and costs; and,

5.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
TX BAR NO. 24088777
**THE ADKINS FIRM, P.C.**
5400 LBJ Fwy., Suite 1200
Dallas, Texas 75240
(214) 974-4030 Telephone
MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF*
*ERIC MATTHEW BENNETT*